[Civ. No. 12181. First Dist., Div. Two. Apr. 19, 1943.]

FRANCES B. HAMILTON, as Executrix, etc., et al., Respondents, v. JUNCTION CITY MINING COMPANY (a Corporation) et al., Defendants; MARY E. SMITH, as Trustee, etc., et al., Appellants.

222

L. C. Smith and A. Dal Thomson for Appellants.

Treadwell & Laughlin, Charles A. Wetmore, Jr., and Russell E. Barnes for Respondents.

SPENCE, J.—Plaintiffs, claiming to be the beneficiaries of a trust mentioned in a certain instrument dated April 14, 1934, brought this action seeking to establish and enforce said trust. The subject matter of the trust consisted of certain shares of the common stock of defendant Junction City Mining Company, a corporation, formed in 1934 by defendant Sorensen, together with the dividends which had accrued thereon. Said shares had not been issued by said corporation and the dividends thereon had not been paid prior to the commencement of this action. After the filing of answers and cross-complaints by various defendants, an offer of compromise was made and accepted pursuant to the provisions of section 997 of the Code of Civil Procedure and a judgment was thereupon entered on June 7, 1939, directing the defendant Junction City Mining Company to issue the stock and to pay the accrued dividends to defendant Mary E. Smith, as trustee. This judgment terminated the litigation as to de-

fendants Junction City Mining Company and Sorensen but the litigation proceeded between plaintiffs, as alleged beneficiaries, defendant Mary E. Smith, as trustee, and certain defendants who also claimed to be beneficiaries of the trust. On August 18, 1941, judgment was entered upon the findings of the trial court whereby it was decreed that defendant Mary E. Smith held 7 per cent of the shares of the Junction City Mining Company together with the dividends which had accrued thereon in trust to distribute the same among the plaintiffs and certain defendants in proportion to the advances made by them respectively as found by the trial court. Defendant Mary E. Smith, as trustee, and other defendants appeal from the last mentioned judgment.

The background of this litigation is found in the financial failure of a mining corporation known as Madrona Dredging Company and the attempts of various persons interested in said corporation to recoup some of their losses. That corporation was formed about 1926 for the purpose of dredging for gold at a location on the Trinity River. Joseph Penso, who is not a party to this action, sold stock in said corporation to various persons who are parties to this action. After the corporation ceased operations about 1930, an unsuccessful effort was made to rehabilitate it. Defendant Mary E. Smith was not a stockholder but was a creditor of the corporation in a sum in excess of $50,000. She held a deed of trust upon the realty and a chattel mortgage upon the equipment of the corporation to secure the indebtedness. She stated that she would have to foreclose whereupon several stockholders talked with her concerning a possible sale of the property to a prospect who had been previously mentioned by Joseph Penso. She was agreeable to a sale and expressed the hope that enough could be realized so that others might benefit by it. She apparently did not desire to have any dealings with Joseph Penso and therefore certain stockholders got in touch with Joseph Penso and sought his assistance. They advised him that any purchaser would have to deal directly with defendant Smith. No purchaser was found at that time and defendant Smith foreclosed and became the owner of all the corporate property.

Thereafter Penso worked for several years with the financial assistance of plaintiffs, who were residents of Chico, and later with the financial assistance of other persons, who were

residents of Stockton, in an endeavor to work out a sale which would benefit those lending their financial assistance as well as defendant Smith. Penso did not believe it feasible to make an advantageous sale of the former Madrona property without additional property so he proceeded to obtain about fifteen other claims owned by various persons. This involved extended negotiations and considerable effort and expenditure. Penso worked for about a year on a sale to one Taylor who took an option given by defendant Smith for a sale at $48,000. This deal was not consummated. He later interested defendant Sorensen and a sale was ultimately made in 1934 for the sum of $48,500, which sum was received by defendant Smith.

During Penso's negotiations with Sorensen, the latter agreed to pay Penso a "commission" or "compensation" of 13 per cent, which arrangement was known to defendant Smith. The understanding was that of this 13 per cent, 6 per cent was to go "to the people in Stockton that finished the financing, and seven per cent to the Chico people." Mr. Sorensen agreed to pay the 6 per cent in cash. When this 6 per cent was later paid, Penso received $1,600 out of the sum paid and the balance went to the "people in Stockton." This litigation involves only the remaining 7 per cent. The 7 per cent was provided for in the agreement of April 14, 1934, after a conversation between Penso, defendant Smith and the attorney for Sorensen. It was understood by all that the 7 per cent was "to take care of the people in Chico" and Penso so advised plaintiffs.

The agreement of April 14, 1934, was the option agreement executed by defendant Smith and Sorensen. The only portion of said agreement which is pertinent here read as follows:

"That in event he (Sorensen) forms a California corporation and assigns to said corporation this agreement or all of the properties and rights purchased under this agreement, that immediately after the transfer to said corporation of this agreement or of all of said properties and rights, that there will be issued to Smith as Trustee seven (7) per cent of all of the issued common stock of said corporation to be formed by Sorensen, which stock will when issued be fully paid and non-assessable, and if the Division of Corporations of the State of California shall not require that said

stock be escrowed, then the certificates representing said shares shall, immediately upon their issuance, be delivered to Smith as Trustee, and if said transfer to said corporation is not made, then Smith, as Trustee, shall have a seven (7) per cent interest in the operation conducted with the properties and rights purchased.''

It should be noted here that the written agreement of April 14, 1934, did not set forth the precise terms of the trust or specify the names of the beneficiaries thereof. Sorensen thereafter formed the Junction City Mining Company. He transferred his option contract to said company and thereafter the sale by defendant Smith of the former Madrona property to said company was consummated in the latter part of 1934. A permit was obtained for the issuance of 7 per cent of the stock of the corporation to defendant Smith, as trustee, but, as above stated, the stock was not actually issued until after this action was commenced by plaintiffs.

In 1938, there was considerable correspondence between the Corporation Commissioner and defendant Smith regarding the permit for the issuance of this stock to defendant Smith as trustee. The commissioner advised defendant Smith that the file did not disclose for whom she was acting as trustee and that the commissioner's information was that the stock remained unissued because of the claim that the consideration for the agreement had not been received by the company. Defendant Smith replied that ''There was a large indebtedness against the former company at the time of my foreclosure and a group of people advanced money for the sale of the property and the proceeds of this 7 per cent will reimburse them for advances and help pay the indebtedness.'' Later in the correspondence, defendant Smith wrote, ''I am not prepared to make a list of names and amounts under the trusteeship . . . ,'' and still later she wrote, ''This whole arrangement was entirely voluntary on my part and I reserved the right to approve the bills. The trust covers any bills against the former dredging company which have my approval.'' It will be noted that defendant Smith's first reply stressed the beneficial interest of a group of people who ''advanced money for the sale of the property'' while her later reply made no mention of that group, but stressed a claimed reserved right on her part to make the creditors

of the former company whose claims she might approve the beneficiaries of the trust.

The main issue presented to the trial court, as set forth in plaintiffs' brief and conceded by defendants to be there set forth with "admirable clarity," was "whether this trust arose from property rights of Joseph Penso in favor of those who advanced money to him, or whether it came from property of Smith and was held by her for the benefit of such creditors of Madrona Dredging Company as she saw fit to favor." The trial court decided this issue in favor of plaintiffs and entered its judgment accordingly.

On this appeal, defendants contend that the evidence is insufficient to establish a trust in favor of plaintiffs. Defendants apparently now concede that a trust was created as they state in their briefs, "That she (defendant Smith) is a trustee is not disputed by us" but they claim that certain of the appealing defendants rather than plaintiffs were the beneficiaries of the trust. In other words, the gist of defendants' contention is that the evidence was insufficient to establish that plaintiffs were beneficiaries of the trust which was admittedly created. We find no merit in this contention. It is entirely clear that the subject matter of the trust represented a portion of the compensation which Sorensen had agreed to pay to Penso in connection with the sale transaction. It is also clear that the persons intended and indicated at all times by Penso as beneficiaries of that portion of his compensation were the group in Chico who had advanced money to him to assist in making the sale. This group included plaintiffs and certain defendants, all of whom were decreed by the trial court to be the beneficiaries.

The somewhat unusual method adopted in creating the trust, having as its subject matter a portion of the compensation of Penso, is explained by the evidence. Defendant Downing, one of those decreed to be a beneficiary, was one of a group who urged defendant Smith, when she was threatening foreclosure to permit the group to get Penso to attempt to make a sale of the property. She consented and the group sought Penso's help and offered him and thereafter gave him financial assistance for that purpose. It was defendant Downing who later "first asked Miss Smith to act as trustee and protect the Chico people." This was apparently agreeable to Penso, who arranged with Sorensen and defendant Smith to

embody the above quoted provision in the agreement of April 14, 1934. Thus the trust was created, not out of the property of defendant Smith but out of the compensation due from Sorensen to Penso, for the purpose of carrying out Penso's commitments to the people in Chico who had advanced money to him in connection with his efforts to consummate the sale of the property of defendant Smith. Penso, rather than defendant Smith, was the trustor, and the consent of defendant Smith became necessary only for the purpose of evidencing her willingness to have a portion of Penso's compensation from Sorensen arranged for in her agreement with Sorensen and for the purpose of evidencing her willingness to act as trustee as suggested by one of the beneficiaries of the trust, which suggestion was agreeable to Penso.

The evidence shows that while Penso was present during the negotiations for the agreement of April 14, 1934, all persons present, including defendant Smith, agreed that the 7 per cent provision of the agreement was ''to take care of the people in Chico'' and it is a reasonable inference from the evidence that defendant Smith and Sorensen as well as Penso then understood and agreed that the persons who were to be the beneficiaries of the trust thus created were the persons in Chico who had advanced money to Penso in connection with the sale transaction. The purpose of the trust was obviously to have the trustee receive the subject matter of the trust, to-wit: a specified portion of the compensation due from Sorensen to Penso to be represented either by 7 per cent of the stock of a corporation which might be formed or ''a seven per cent interest in the operation conducted with the properties and rights purchased,'' and to have the trustee distribute the same to the beneficiaries at such time as the distribution thereof might become feasible. At the time the trust was created, it was not certain that a corporation would be formed or, in the event a corporation should be formed, that a permit to issue the stock would be granted by the Corporation Commissioner without requiring that the stock be escrowed. Hence, the creation of the trust as indicated was a convenient means of providing for the handling of the interests of the several beneficiaries, each of whom was entitled to only a proportionate interest.

Section 2221 of the Civil Code provides that ''. . . a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable cer-

tainty: 1. An intention on the part of the trustor to create a trust, and, 2. The subject, purpose and beneficiary of the trust.'' As the trust did not involve real property, it is not contended that any writing was required for the purpose of creating the trust and therefore the fact that the agreement of April 14, 1934, between defendant Smith and Sorensen, did not set forth the precise terms of the trust or specify the names of the beneficiaries is immaterial. We are satisfied that the evidence showing the words and acts of Penso, as trustor, as well as the words and acts of defendant Smith and Sorensen at or about the time of entering into the agreement of April 14, 1934, indicated ''with reasonable certainty'' the intention on the part of Penso, acquiesced in by defendant Smith and Sorensen, to create a trust and the subject, purpose and beneficiaries of the trust as required by said section 2221 and we are further satisfied that such evidence was sufficient to establish a trust in favor of plaintiffs.

In this connection, defendants also contend that ''the findings as to the respective interests of the plaintiffs and some of the defendants are not sustained by the proof.'' Our review of the record leads us to the conclusion that while no books were kept by Penso showing the amounts which the various plaintiffs and defendants advanced to him, there was sufficient evidence to show the respective amounts so advanced as found by the trial court. But defendants take exception to the method adopted by the trial court in determining the respective interests of the parties as beneficiaries of the trust. The method adopted by the trial court was to add to the amount advanced to Penso by each beneficiary the amount previously advanced by such beneficiary to the Madrona corporation. The total amount so advanced to Penso and to said corporation by all beneficiaries exceeded $64,000 and each beneficiary was decreed to be entitled to share in the distribution of the subject matter of the trust in the proportion that the total advances of such beneficiary bore to total advances of all beneficiaries. It is true that Penso never advised those advancing money to him of the exact manner in which he intended to protect their interests or of the exact manner in which their respective interests would be determined in any money or property which might be received as a result of his efforts. It is also true that the evidence showed that it was Penso's intention to have each

beneficiary share in the subject matter of the trust in the proportion that such beneficiary's advances to Penso bore to the total of all beneficiaries' advances to Penso without regard to the advances of the various beneficiaries to the Madrona corporation. It does not appear, however, that the error, if any, in the adoption of the above mentioned method by the trial court resulted in any prejudice to any appealing defendants who were found to be beneficiaries of the trust. The only alleged prejudice suggested by defendants is prejudice to defendant Shalz who made no advances to Penso. But under the findings of the trial court which are sustained by sufficient evidence, the only persons who were entitled to share as beneficiaries of the trust were the persons who had made advances to Penso. Hence, any alleged prejudice to defendant Shalz, who was not entitled to any share in the subject matter of the trust, cannot be considered.

█ Defendants further contend that "the claim of plaintiffs rests upon an illegal consideration and is therefore to be rejected." This contention is based upon the fact that Penso was not a licensed real estate broker. We may assume, without deciding, that the fact that Penso was not a licensed real estate broker, might have affected the right of Penso to recover any compensation from Sorensen under his original agreement with Sorensen. The fact remains, however, that the portion of Penso's compensation which is involved here has been admittedly transferred in trust to defendant Smith, as trustee, and the judgment from which this appeal was taken was one establishing the rights of plaintiffs and certain defendants as beneficiaries of the trust and was not one establishing any right of Penso. If Penso acted as a real estate broker, as claimed by defendants, rather than as an independent operator, as claimed by plaintiffs, there is no showing that plaintiffs knew that Penso had no broker's license or that plaintiffs had any reason to believe that he would not obtain any license that might be required. Penso has long since parted with all claim to the subject matter of the trust and plaintiffs were in no sense *in pari delicto* with him if he violated the law in contracting for compensation from Sorensen without first obtaining a license. Penso's compensation having been paid and the trust having been admittedly created, we are of the opinion that no innocent beneficiary should be deprived of his rights merely because of the

claimed illegality of the consideration in Penso's original agreement with Sorensen.

Defendants further contend that "the discretion to distribute the property in a manner to be designated by the trustee is entirely consistent with the existence of a trust." This contention does not require discussion as it proceeds upon the theory that defendant Smith was the trustor, as well as the trustee, of a trust created out of her own property. This theory was rejected by the trial court and the theory of plaintiffs, above discussed, was accepted. There was ample evidence to sustain the trial court's findings showing that defendant Smith, as trustee, was not given any discretion with respect to the distribution of the trust property.

Finally defendants contend that "the trial court erred in refusing to make any allowance to the defendant trustee for expenses." But the defendant trustee did not set forth or pray for any expenses in her pleadings and she did not present any evidence on the trial concerning any such expenses. The findings and judgment were filed on August 18, 1941. On the same day, defendant Smith filed an unverified document in the action entitled "Second Account of Mary E. Smith, Trustee," in which she claimed credit for disbursements amounting to $11.77. On September 2, 1941, defendants filed a document entitled "Defendants' Memorandum of Costs and Disbursements." The costs of all defendants, as therein set forth and amounting to $363.78, included, besides ordinary costs of litigation, certain items of taxes and traveling expenses. The judgment provided "That the said trustee pay from said trust property the costs of plaintiffs in this action taxed at the sum of $——, and the costs of defendant Mary E. Smith, as trustee, in this action taxed at the sum of $——."

We find no error in the refusal of the trial court to provide in the judgment for the trustee's expenses under section 2273 of the Civil Code as there was no pleading or proof that the defendant trustee had "actually and properly incurred" any expenses in the performance of the trust.

Nor does the record disclose any error of which defendants may complain with respect to costs in the action. Plaintiffs were the prevailing parties and were entitled to their costs (Code Civ. Proc., sec. 1033). The trial court did provide, however, in the judgment for the payment

of the costs of defendant Mary E. Smith, as trustee, but not for the payment of the costs of the other defendants. The memorandum of costs filed on September 2, 1941, purported to be filed on behalf of all defendants without showing any segregation of the costs of the trustee. But if the costs were taxed and any items of costs of the defendant trustee were improperly disallowed under the circumstances, the defendant trustee's remedy would have been by an appeal from the order taxing costs. The record does not disclose however that any such order was made or that any such appeal was taken. Therefore the alleged costs of the defendant trustee, as distinguished from the expenses contemplated by section 2273 of the Civil Code, cannot be considered on this appeal.

The judgment is affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied May 19, 1943, and appellants' petition for a hearing by the Supreme Court was denied June 17, 1943.